**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

**UNITED STATES OF AMERICA**

**v.**                                                        **Criminal No. 2:23-cr-00024**

**JONATHAN LEVI RIDER**

**DEFENDANT'S SENTENCING MEMORANDUM**

Defendant, Jonathan Levi Rider, by his counsel, submits this Memorandum outlining the various 18 U.S.C. § 3553(a) factors for the Court's consideration at his upcoming November 9, 2023, sentencing hearing.

**A. Legal Objections:**

On August 14, 2023, this Court accepted Jonathan Rider's guilty plea to the offense of possession of child pornography.  Mr. Rider has no objections to the Probation Officer's calculations for his total base offense level (30) and criminal history points (0).  (PSR ¶¶ 39, 42).  The advisory guideline range would be 97 to 121 months.  (PSR ¶ 62).   Based upon Mr. Rider's current indigent status and need for additional vocational training, Mr. Rider would ask this Court to waive the imposition of the $5,000 special assessment.  The remaining objections set forth in the PSR Addendum contain additional factual information which Mr. Rider would ask this Court to consider for purposes of sentencing and require no further rulings from this Court.  There have been no restitution claims submitted in this case.

**B.** <u>**18 U.S.C. § 3553(a) Factors for Consideration:**</u>

A sentence within the advisory Guideline range would be significantly greater than necessary for purposes of punishing Mr. Rider for his criminal conduct. For example, the U.S.S.G. § 2G2.2 guideline calculation overlooks the following mitigating 18 U.S.C. § 3553(a) factors concerning:

(1)   Mr. Rider's status as a juvenile at the time he obtained and possessed the majority of child pornography content documented in the PSR. His conduct directly arising from the offense of conviction was limited to three contraband video files possessed on his smartphone.

(2)   Mr. Rider's personal history reflects that at the age of two, WVDHHR placed him in foster care after he was removed from a home environment where he and his siblings had been neglected. His adoptive parents have continually sought assistance in treating his ADHD/Tourette's syndrome diagnoses and cognitive impairment issues throughout his time in the Kanawha County School system.

(3)   The use of the § 2G2.2 guideline in child pornography cases results in an excessive offense level calculation where several of the enhancements arise from materials possessed as a juvenile and are not rationally based on any aggravating conduct.

(4)   The results of Steven F. Dreyer, Ph.D.'s forensic psychological assessment which concluded the combination of ADHD/Tourette's syndrome and cognitive issues resulted in delays in Mr. Rider's academic progress, psychosocial judgment, and emotional development. Dr. Dreyer has further concluded that Mr. Rider did not have the characteristics of a sexual predator or pedophile.

(5)   Mr. Rider has a strong family support system with his parents who will do everything within their power to support their son in locating a vocational training program suitable for his skills. They will also ensure that Mr. Rider abides by all of the stringent terms and conditions of any extended period of supervised release.

Mr. Rider would ask this Court to consider all of these factors to impose a downward variance sentence of a term of imprisonment of time served to be followed by a ten-year term of supervised release.[1] Mr. Rider would have no objection to the Court imposing a special condition that the initial portion of the supervised release term be spent on home confinement. The extended period of supervised release will include all of the restrictive conditions set forth in the PSR which are tailored to monitor Mr. Rider's progress towards rehabilitation. As such, the suggested sentence, which includes a longer term of post-release supervision, would strike an appropriate balance for imposing a sufficient, but not greater than necessary, punishment for Mr. Rider's conduct. (PSR ¶ 17). Mr. Rider would rely upon the following factors in support of this suggested sentence:

(1)     Where Mr. Rider's possession of child pornography began as a juvenile and resumed after he received a second smartphone from his parents, this Court should consider the recognized mitigating factors of youth. In today's society where nearly everyone has access to the Internet, exposure to pornography during adolescence is becoming the norm rather than the exception. Ex. A.[2] Adolescent brains are in the critical periods of development and may be more susceptible and sensitive to the impact of pornography as compared to adults. *Id.* The rewarding

---

[1] The time served component would include the three days where Mr. Rider was in custody at the Carter County Detention Center from February 8, 2003, to February 10, 2003. (PSR at 1).

[2] *See* Amanda L. Giordano, Ph.D., LPC, *What to Know About Adolescent Pornography Exposure*, Psychology Today (Feb. 27, 2022), attached as Exhibit A.

nature of pornography may lead some adolescents lose control over its use which can lead to negative consequences. *Id.* Using smartphones to access free pornography online is the most common means for teens to view pornographic materials. *Id.*

During Mr. Rider's junior year at Capital High School, he sought to obtain pornography consisting of women who were his age or a couple of years older than him. Mr. Rider was not interested in obtaining pornographic content involving young children. He utilized various internet sites as well as the Kik social media application on his first smartphone as a means of obtaining pornography.[3] Several of the files which were sent to Mr. Rider through Kik included the type of child pornography which was not something that Mr. Rider requested or was particularly interested in. The majority of these contraband files remained within Mr. Rider's online account on a server maintained by Kik as opposed to being stored on his smartphone. (PSR ¶¶ 13-14). No state charges were ever filed against Mr. Rider arising from the State Police's August 2021 investigation.[4] (PSR ¶ 14).

The Supreme Court has addressed issues relating to proportionate sentencing for juveniles in light of Eighth Amendment safeguards.[5] The Court's decisions in *Roper* and *Graham* reemphasized the "distinctive attributes of youth diminish the

---

[3] The terms of service for Kik allow individuals living in the United States who are 13 or older to maintain accounts. *See* https://kik.com/terms-of-service/.

[4] If charges had been filed against Mr. Rider, they would have stayed in juvenile court since the offense of possession of child pornography is not one of the designated offenses under W. Va. Code § 49-5-10(d) which would have allowed transfer to adult jurisdiction.

[5] *Miller v. Jackson*, 567 U.S. 460, 469-475 (2012); *Graham v. Florida*, 560 U.S. 48, 68-72 (2010); *Roper v. Simmons*, 543 U.S. 551, 567-574 (2005).

penological justification for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes." *Miller*, 567 U.S. at 470. These attributes identified by the Court were derived from the results of scientific studies as well as recognition of common sense retained by parents.

First, juveniles have a "lack of majority and an underdeveloped sense of responsibility" which leads to recklessness, impulsivity, and heedless risk taking. *Graham*, 560 U.S. 560 at 68; *Roper*, 543 U.S. at 569. One psychological study cited by the *Roper* Court noted that adolescents are over-represented statistically in virtually every category of reckless behavior.[6]  *Id.*  Second, juveniles are more vulnerable or susceptible to negative influences and outside peer pressure since they have limited control over their own environments. *Id.* Finally, the character of a juvenile is not considered to be as well formed as an adult allowing for judicial consideration that their conduct is not as morally reprehensible as that of an adult. *Id.* The relevance of youth as a mitigating factor derives from the fact that "the signature qualities of youth are transient" and as individuals mature, "the impetuousness and recklessness" of youth can subside. *Roper*, 453 U.S. at 570. In each of the three cases, the Court recognized that crimes committed by juveniles should not be punished as severely as the same crimes committed by adults. *Miller*, 567 U.S. at 476; *Graham,* 560 U.S. at 68-72; *Roper*, 543 U.S. at 571-573.

---

[6] *Id.* at 569 citing Arnett, *Reckless Behavior in Adolescence:  A Developmental Perspective*, 12 Developmental Review 339 (1992).  In recognition of the comparative irresponsibility of juveniles, nearly every state prohibits minors from obtaining alcohol until age 21.

Ongoing developments in psychology and neuroscience continue to show fundamental differences between the brains of adolescents and adults which serve to strengthen the mitigating factors recognized by the Supreme Court. *Miller*, 567 U.S. at 472 n.5. In *Miller*, the Court noted "[i]t has become increasingly clear that adolescent brains are not yet fully mature in regions and systems related to higher-order executive functions such as impulse control, planning ahead, and risk avoidance." *Id.* Research has found that the frontal lobe area of the brain which is responsible for higher-order executive functions undergoes far more change during adolescence than during any other stage of life.[7] Ex. B at 2. The frontal lobe is also the last part of the brain to fully develop, which means that the impulse control and reasoning skills of adolescents are not as good as those of older adults. *Id.* Although eighteen is the age at which society generally considers someone reaches adulthood, science has determined that the mid-twenties is closer to the biological age of maturity for purposes of brain development. Ex. B at 5.

This Court should take the above-stated findings into consideration where Mr. Rider's involvement in child pornography began at age seventeen and concluded approximately fifteen months later with the November 17, 2022, seizure of his smartphone. Mr. Rider's possession of files of child pornography provides an example of the type of reckless behavior in which he engaged without fully comprehending the

---

[7] *See* Adam Ortiz, *Adolescence, Brain Development, and Legal Culpability*, Juvenile Justice Center, American Bar Association (Jan. 2004), and *Brain Maturity Extends Well Beyond Teen Years*, NPR (Oct. 10, 2011), attached as Exhibit B.

severity of his conduct or considering the consequential legal ramifications to himself. Science has shown that Mr. Rider, who will turn twenty on November 19, has not yet reached the age where his brain has fully matured to the extent that those decisions that he made as a youth should be judged on the same level as an adult. As such, these factors would warrant against imposing a lengthy custody sentence and instead placing him on an extended period of supervised release.

(2)     The letter submitted by Mr. Rider's parents provides an accurate summary of Mr. Rider's personal history and would further support the requested variance sentence.[8]  Mr. Rider was placed in foster care with his future adoptive parents when he was two and a half years old. The parental rights of his birth parents were terminated as a result of the neglect of care provided to Mr. Rider and his other siblings. The records of the proceedings of Mr. Rider's adoption reflected that his birth parents had histories of mental health problems as well as drug and alcohol abuse. (PSR ¶ 62).

At the age of five, Mr. Rider was diagnosed with ADHD, non-verbal Tourette's syndrome, and dyslexia. (PSR ¶ 52).  Starting in kindergarten, Mr. Rider had an Individual Education Program in place for all of his years in the Kanawha County School system. When Mr. Rider was ten, a psychoeducational evaluation showed that his full-scale IQ score of 87 placed him in the lower nineteenth percentile of his peers.

---

[8] A November 1, 2023, letter from Clarence J. and Brenda Rider was separately submitted to the Court and provided to the Government and the Probation Office.

(PSR ¶ 58).   During those years, the Riders sought out-patient counseling and treatment from local mental health providers for their son's compulsive behaviors.

When Mr. Rider was ready to begin high school, the majority of his classes at Capital High were through special education services.   The COVID-19 pandemic effectively isolated Mr. Rider from gathering with his peers as he was homebound for portions of his freshman and sophomore years in 2000 and 2021.   During Mr. Rider's junior year, he started taking vocational classes offered through the Carver Career Center.   As a senior, Mr. Rider enrolled in a two-year advanced technology program which had a projected graduation date in 2023.   While on bond, Mr. Rider successfully completed the classroom assignments for that program.   However, Mr. Rider could not officially graduate with a degree as he was not allowed back on campus to complete the hand-on component for the program.   Mr. Rider hopes that he will be able to enroll in a similar vocational program offered at BridgeValley as Carver's advanced technology program is no longer available.

Since his arrest, Mr. Rider has spent a lot of time considering the wrongfulness of his conduct.   He is well aware that he should not have been using the Internet and his Kik account for the purpose of obtaining adult and child pornography.   Mr. Rider will learn the steps to keep him from returning to any such content through participating in a Probation sponsored sex offender treatment program while on supervised release.

(3)      The Probation Officer's application of the U.S.S.G. § 2G2.2 guideline to Mr. Rider's case would call for the imposition of a sentence between 97 to 121 months

for someone who has committed his first federal felony offense.  The requested

variance takes into consideration that a number of courts, including this Court, have

held that the U.S.S.G. § 2G2.2 guideline for child pornography offenses should be

afforded less deference than other guidelines.  This particular guideline was <u>not</u>

based upon the type of empirical data and national experience that the Sentencing

Commission has relied upon in determining other sentencing guidelines.[9]  These

courts have recognized that the ordinary first-time offender likely qualifies for a

sentence approaching the statutory maximum penalty based upon numerous

enhancements which are inherent with the offense conduct.  For the reasons more

fully set forth below, Mr. Rider would ask this Court to find that a strict application

of the U.S.S.G. § 2G2.2 guideline is not warranted in this case.

---

[9] *See U.S. v. Jenkins*, 854 F.3d 181 (2d Cir. 2017); *U.S. v. Henderson*, 649 F.3d 955 (9th Cir. 2011); *U.S. v. Dorvee*, 616 F.3d 174 (2d Cir. 2010); *U.S. v. Grober*, 624 F.3d 592 (3d Cir. 2010); *U.S. v. D.W.*, 198 F. Supp. 3d 18 (E.D.N.Y. 2016); *U.S. v. E.L.,* 188 F. Supp. 3d 152 (E.D.N.Y. 2016);  *U.S. v. Pelloski*, 31 F. Supp. 3d 952 (S.D. Ohio 2014); *U.S. v. Nash*, 1 F. Supp. 3d 1240 (N.D. Ala, 2014); *U.S. v. Kelly*, 868 F. Supp. 2d 1210 (D.N.M. 2012); *U.S. v. Price*, 2012 U.S. Dist. Lexis 38397 (C.D. Ill. 2012); *U.S. v. Zapata*, 2011 U.S. Dist. Lexis 108813 (N.D. Ind. 2011);  *U.S. v. C.R.*, 792 F. Supp. 2d 343 (S.D.N.Y. 2011); *U.S. v. Tews*, 2010 U.S. Dist. Lexis 48182 (E.D. Wis. 2010); *U.S. v. Howard*, 2010 U.S. Dist. Lexis 17740 (D.C. Neb. 2010); *U.S. v. Young*, 2010 U.S. Dist. Lexis 10086 (W.D. Mich. 2010); *U.S. v. Raby*, 2009 U.S. Dist. LEXIS 121836 (S.D. W. Va. 2009); *U.S. v. Cruikshank*, 667 F. Supp. 2d 697 (S.D. W. Va. 2009); *U.S. v. McElheney*, 630 F. Supp. 2d 886 (E.D. Tenn. 2009); *U.S. v. Beiermann*, 599 F. Supp. 2d 1087 (N.D. Iowa, 2009); *U.S. v. Phinney*, 599 F. Supp. 2d 1037 (E.D. Wis. 2009); *U.S. v. Stern*, 590 F. Supp. 2d 945 (N.D. Ohio 2008); *U.S. v. Johnson*, 588 F. Supp. 2d 997 (S.D. Iowa 2008); *U.S. v. Hanson*, 561 F. Supp. 2d 1004 (E.D. Wis. 2008); *U.S. v. Shipley*, 560 F. Supp. 2d 739 (S.D. Iowa 2008); *U.S. v. Baird*, 580 F. Supp. 2d 889, 895 (D. Neb 2008).

In the past thirteen years, the U.S.S.G. § 2G2.2 guideline has been the subject of several reviews conducted by the Sentencing Commission. Public comments previously submitted by members of the federal judiciary demonstrated that the current guideline does not provide a reliable mechanism between distinguishing between first offenders and more serious offenders. The Sentencing Commission's June 29, 2021, Report concluded that the offense level enhancements set forth in the U.S.S.G. § 2G2.2 guideline are no longer valid to distinguish between offenders in terms of the seriousness of the offense or the individual culpability of the offender.[10] Report at 68-69. Improvements in computer and internet technologies over the past twenty years have resulted in four of the six offense level enhancements under U.S.S.G. § 2G2.2 being routinely applied in every case. *Id.* at 68. The presence of these enhancements in the majority of cases is evidenced by the following data released by the Sentencing Commission for the 2019, 2020, and 2021 fiscal years:[11]

| § 2G2.2 Enhancements | 2019 | 2020 | 2021 |
|---|---|---|---|
| +2 (use of a computer) | 95.8% | 94.2% | 96.1% |
| +2 (possession of prepubescent minors) | 94.3% | 93.6% | 94.5% |

---

[10] *See* U.S. Sentencing Comm'n, *Federal Sentencing of Child Pornography:  Non-Production Offenses* (June 2021) https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210629_Non-Production-CP.pdf. Citations to the Commission's report will be made as "Report at #."

[11] Relevant pages concerning data pertaining to the U.S.S.G. § 2G2.2 offense level enhancements from the 2019, 2020, and 2021 *Use of Guidelines and Specific Offense Characteristics* published by the Sentencing Commission have been attached as Exhibit C.

| | | | |
|---|---|---|---|
| +4 (S&M depictions)[12] | 81.5% | 81.5% | 81.8% |
| +5 (greater than 600 images) | 75.6% | 73.0% | 73.2% |

Mr. Rider's base offense level has been increased by nine levels based upon content and number of child pornography files that he possessed as a juvenile.[13]  The net impact of these cumulative enhancements escalates Mr. Rider's total offense level by a factor of years.

The Commission recognized that 59% of the non-production child pornography offenders sentenced in fiscal year 2019 received a variance below the stated guideline range.  *Id.* at 24.  This figure suggests that the majority of district courts have found the U.S.S.G. § 2G2.2 guideline no longer worthy of deference.  The Report renews the call previously made by the Commission in 2012 for Congress to revamp the U.S.S.G. § 2G2.2 guideline with enhancements which are based solely upon three categories related to the offender's conduct in the instant offense as well as the offender's history.  These three categories for review include:

> (1)    The content of the defendant's collection and nature of collecting behavior;

---

[12]  The U.S.S.G. § 2G2.2(b)(4) guideline was expanded in 2016 to include depictions of the sexual abuse of infants and toddlers as being sadistic and masochistic content.

[13]  Counsel recognizes that U.S.S.G. § 1B1.3(a)(2) provides that relevant conduct includes all acts that were part of the same course of conduct or common scheme or plan as the offense of conviction.  The Guidelines Manual further provides that offenses utilizing the § 2G2.2 guideline are to be grouped together in a single count.  U.S.S.G. § 3D1.2(d).  Federal caselaw provides that criminal conduct committed by a juvenile can be considered as relevant conduct where similar conduct was committed as an adult.  *See Vargas-De Jesus v. United States*, 813 F.3d 414, 418 (1st Cir. 2016); *United States v. Sparks*, 309 Fed. App'x. 713, 717 (4th Cir. 2009); citing *United States v. Gibbs*, 182 F.3d 408, 442 (6th Cir. 1999); *United States v. Thomas*, 114 F.3d 228, 267 (D.C. Cir. 1997).

> (2)     The degree of a defendant's involvement in an internet community devoted to child pornography; and
>
> (3)     The extent that a defendant engaged in sexually abusive or exploitative conduct prior to, or concurrently with, the instant offense.

Report at 28.  The presence of aggravating factors within any of these three categories would warrant an enhanced punishment depending upon the degree that they are present in a particular case.  A district court following this type of approach would no longer be bound to impose ubiquitous enhancements such as the use of a computer, possession of content containing pre-pubescent minors, or having more than 600 images which is presently an integral part of the U.S.S.G. § 2G2.2 guideline.  If those enhancements were discounted for purposes of considering a variance sentence, Mr. Rider's advisory guideline range would be significantly lower.

In evaluating the nature of an offender's collection, the Report suggested consideration of a number of quantifiable factors such as the number of still images and video files possessed, the age of the youngest depicted minor, the gender, the method of receiving, the method of distributing, the location where the files were stored and whether any sophisticated efforts were undertaken to conceal the offense conduct.  Report at 29.  The Commission noted that video files are more prevalent with today's child pornography offender than in 2012.  *Id.* at 30.  This is likely due to the fact that faster download speeds combined with larger hard drives has made it easier for offenders to download larger sized video files.  In fiscal year 2019, the median number of images within the average possession offender's collection was

12

2,350. *Id.* This figure includes consideration that all video files, regardless of length, are treated as being equivalent to having 75 images.

The charged offense conduct against Mr. Rider for possessing three videos of child pornography has to be one of the lowest amounts of contraband for any federal prosecution brought in this district. Moreover, two of these videos had been deleted leaving only one video being able to be viewed on Mr. Rider's smartphone. The application of relevant conduct which includes the greater number of videos and images which Mr. Rider possessed as a juvenile becomes the proverbial tail wagging the dog scenario that dominates the U.S.S.G § 2G2.2 offense level calculation. *See McMillian v. Pennsylvania*, 477 U.S. 79, 88 (1986).

Prior to the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the Fourth Circuit acknowledged that the proof by a preponderance of the evidence standard for offense level enhancements was sufficient as along as the enhancement is not "a tail which wags the dog of the substantive offense." *United States v. Montgomery*, 262 F.3d 233, 249 (4th Cir. 2001). Post *Booker*, the Fourth Circuit has recognized such concerns were put to rest due to the advisory nature of the Sentencing Guidelines and the discretion afforded to judges in fashioning an appropriate sentence. *United States v. Grubbs*, 585 F.3d 793, 801-802 (4th Cir. 2009).

Without the inclusion of the material possessed as a juvenile, there would be no four offense level enhancement for sadistic or masochistic ("S&M") content and

only a three offense level enhancement for possessing three videos.[14]  The enhancement for possessing S&M depictions imposes a strict liability standard without regard as to whether a defendant intended to possess such images or actually derived any pleasure from viewing them.  *United States v. Maurer*, 639 F.3d 72, 80 (3d Cir. 2011); *United States v. Freeman*, 578 F.3d 142, 146 (2d Cir. 2009).[15]  The S&M enhancement applies regardless if an offender has one or one hundred files having such content.  There is no forensic evidence in this case that Mr. Rider was actively searching for sadistic and masochistic conduct involving child pornography.

With respect to the second category, the Commission recognized in 2012 that child pornography offenders tended to socialize with others on the Internet as a means of obtaining contraband materials.  The Report noted that 36.4% of possession offenders sentenced in fiscal year 2019 belonged to a "child pornography community."  Report at 38.  An offender's inclusion within the Commission's "child pornography community" can include any of the following conduct:  participation in an online group whose members interact with each other over the Internet; conversing with another individual about child pornography or the sexual abuse of a minor; distributing or receiving child pornography by any personal means; or working with another individual to produce child pornography.  *Id.*

---

[14] Three videos would be treated as 225 images (3 x 75), which would fall between 150 images and 300 images resulting in a three offense level enhancement under U.S.S.G. § 2G2.2(b)(7)(B).

[15] The 2016 revisions to the U.S.S.G. § 2G2.2 guideline as well as the majority of circuits have held the sexual penetration of a minor by an adult would qualify for the S&M enhancement.  *See United States v. McLaughlin*, 760 F.3d 699, 703 (7th Cir. 2014); *United States v. Groenendal*, 557 F.3d 419, 425 (6th Cir. 2009); *United States v. Belflower*, 390 F.3d 560, 562 (8th Cir. 2004).

Mr. Rider's choice to use the Kik social media application to obtain pornography files would be the only factor that falls within this category. Again, Mr. Rider's decision to obtain adult pornography files through Kik resulted in child pornography files being sent to him. There are no allegations in this case that Mr. Rider engaged in any inappropriate contacts with any minors through Kik or any other form of social media. Mr. Rider never posted any pornographic images of himself on any form of social media.

In regard to the third category, the Commission has recognized that sexually abusive or exploitative conduct involving minors provides a more effective means of distinguishing offenders based upon their culpability and level of dangerousness. Report at 44. This type of aggravating conduct can include contact and non-contact sex offenses and prior non-production child pornography offenses. Report at 40. This is not a factor, as Mr. Rider has zero criminal history points and has no history of committing any sexual offenses against minors. Should the Court consider the Sentencing Commission's recommendations for the appropriate enhancement factors, as well as the other present mitigating factors, the suggested variance sentence would provide a sufficient punishment for Mr. Rider's criminal conduct.

(4)    This Court can consider the results of a psychological evaluation of Mr. Rider conducted by Steven F. Dreyer, Ph.D., a local forensic psychologist with nearly forty years of experience.[16]   Dr. Dreyer personally interviewed Mr. Rider at his office

---

[16] A copy of Dr. Dreyer's report was attached to the final PSR.   Along those lines, counsel previously submitted a letter from Paul D. Knowles, Mr. Rider's treating

and utilized several objective psychological and intelligence tests. Mr. Rider told Dr.

Dreyer that he knew that watching child pornography was wrong as he would feel

guilty watching it and that he did not really appreciate how wrong it was from a legal

standpoint. Dreyer Report at 4. Mr. Rider has now realized that "it's time for me to

stay away from any kind of pornography because it's not real and can mess with me

ever having a real relationship." *Id.*

The results of the intelligence testing showed that Mr. Rider remained in the

low average range at the 18th percentile. Dreyer Report at 7. His low scores in

perceptual reasoning (6th percentile) and processing speed (4th percentile) were

consistent with tests previously done through the school system and document Mr.

Rider's deficits in being able to learn through visual cues. Mr. Rider is reading at the

level of a seventh grader, and his math computation and spelling skills were at the

1st percentile of his peers. Dreyer Report at 8, 9.

Dr. Dreyer's conclusions from his evaluation of Mr. Rider are set forth in the

PSR. (PSR ¶ 53). Dr. Dreyer's opinions were further based upon the lack of any

allegations or evidence that Mr. Rider had ever attempted or engaged in any

inappropriate contacts with any child and had never engaged in any sexually explicit

chat with anyone through the internet. Dreyer Report at 12.

Additionally, this Court should further consider the results of a social science

study published in 2016 by the United States Probation and Pretrial Services to

---

neurologist which offers his opinion concerning Mr. Rider's level of social maturity
given his ADHD/Tourette's diagnoses. Copies of both documents have been
previously provided to the Government and the Probation Office.

assess whether federal sex offenders were more likely to reengage in criminal activity during their period of supervised release.[17]  The study undertaken by the Probation and Pretrial Services Offices comprised 7,416 male sex offenders who were on federal supervised release during the period between 2007 and 2013.  Ex. D at 3.

At the start of any federal offender's term of supervised release, the offender undergoes a risk assessment test called the Post-Conviction Risk Assessment (PCRA) which the Probation Office uses to categorize offenders into risk levels of low, low/moderate, moderate, or high.  Ex. D at 3.  The study evaluated the male sex offender's PCRA score to see if it corresponded with his actual behavior while on supervision.  A review of the PCRA scores for child pornography offenders showed that 77% of that group was categorized as "low risk" while only 31% of the non-sex offender population fell within that same category.  Ex. D at 6, Fig. 1.  For the male sex offender group whose PCRA scores placed them in the "low risk" category, only 6.7% of this group was subsequently arrested for a new charge while 5.5% of the group were subsequently revoked.  Ex. D at 10, Fig. 4.

This study compared the rate of recidivism over a three-year period for child pornography offenders with non-sex offenders.  Ex. D at 7, Table 5.  Only 4.9% of the child pornography offender group had incurred a "major arrest" during that time

---

[17] *See* Thomas H. Cohen & Michelle C. Spidell, *How Dangerous Are They? An Analysis of Sex Offenders Under Federal Post-Conviction Supervision*, Federal Probation Journal (Sept. 2016), attached as Exhibit D.

period as compared to an arrest rate of 23% for the non-sex offender group.[18]  *Id.*  The

overall revocation rate for child pornography offenders was 11.6% which was nearly

half of the revocation rate of 22.6% for non-sex offenders.  *Id.*  Only 2.6% of the child

pornography offender group had been subsequently arrested for a sex offense.  *Id.*

The authors of the study recognized that follow-up studies concerning the long-term

arrest rates for sex offenders were needed given that the majority of federal sex

offenders typically serve longer than three-year terms of supervised release.  Ex. D

at 11.

The figures from this study are encouraging in reflecting that child

pornography offenders present lower PCRA scores, as well as lower risk to reoffend

in the future, than persons convicted of all other types of federal offenses.  The initial

findings also show that child pornography offenders also present a relatively low risk

to commit any future sex offense against another person.  These results would further

be consistent with recidivism data analyzed by the Sentencing Commission indicating

that "first offenders" such as Mr. Rider generally pose the lowest risk of recidivism.[19]

Mr. Rider would meet the initial qualifications of being a "zero point" offender

under the new U.S.S.G. § 4C1.1 guideline for an additional two offense level

---

[18] A "major arrest" excluded consideration of any minor offense such as breach of the peace, invasion of privacy, prostitution, obstruction of justice, liquor law and traffic offenses.  Ex. D at 7, Table 5.

[19] *See, e.g.,* U.S. Sentencing Comm'n, *Recidivism Among Federal Offenders:  A Comprehensive Overview* 18 (March 2016), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2016/recidivism_overview.pdf.

reduction.    However, because Mr. Rider's offense of conviction falls within the definition of a "sex offense," he is precluded from consideration for that reduction. U.S.S.G. § 4C1.1(a)(5).  It is unfortunate that the Sentencing Commission did not include a carve out exception for those sex offenses such as possession of child pornography where the offenders have not engaged in any conduct which resulted in violence or physical abuse being committed against a minor.

(5)      This Court should consider that Mr. Rider presently has a strong family support network with his parents, Clarence and Brenda Rider, with whom Mr. Rider will continue to reside in their home in Charleston.  The Riders will be providing an additional level of monitoring to ensure that their son abides by the terms and conditions of any supervised release term.  They are most concerned about taking measures to provide for his wellbeing when they are gone as Jonathan has no siblings or other relatives who could help in that manner.

Several of the conditions for supervised release will ensure that Mr. Rider does not return to the type of conduct which got him into trouble in this case.  Mr. Rider will be subject to undergoing a sex offender risk assessment upon release from custody and participating in an out-patient sex offender treatment program which could last for several years.  He will be subject to bi-annual polygraph testing to ensure that he is complying with all of the conditions of his release. He will only be permitted to have a smartphone upon the approval of his Probation Officer and that privilege will come with limitations as to the types of internet sites that he can visit.

The Court should further consider that this conviction carries significant collateral consequences for Mr. Rider. The remainder of his life will always be shadowed by the stain of having a federal felony conviction for a child pornography offense. He will have to abide by the civil registration requirements as a sex offender and be responsible for timely updating any significant changes in his life. His employment opportunities will be limited as there are certain employers who will refuse to hire a sex offender, regardless of the fact that Mr. Rider has never committed any type of hands-on sex offense. Given these factors, a ten year term of supervised release should be sufficient time for Mr. Rider to demonstrate the progress that he intends to make in his life to this Court and to become a productive member of the community.

Respectfully submitted this 2nd day of November, 2023.

**JONATHAN LEVI RIDER**

**By Counsel**

**WESLEY P. PAGE**
**FEDERAL PUBLIC DEFENDER**

**s/David R. Bungard**
David R. Bungard, Bar Number: 5739
Assistant Federal Public Defender
Office of the Federal Public Defender
300 Virginia Street, East, Room 3400
Charleston, West Virginia  25301
Telephone: (304) 347-3350
Facsimile: (304) 347-3356
E-mail: david_bungard@fd.org